Kasey Nye, Esq.
SB #020610
knye@waterfallattorneys.com

WATERFALL ECONOMIDIS CALDWELL
    HANSHAW & VILLAMANA, P.C.
5210 E. WILLIAMS CIRCLE, SUITE 800
TUCSON, ARIZONA 85711
TELEPHONE (520) 790-5828
FACSIMILE (520) 745-1279
*Attorneys for Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | Chapter 11 |
| JBL RESTAURANT INVESTMENTS, INC., | Case No.    4:22-bk-00886-BMW<br>4:22-bk-02577-BMW |
| JAMES BRIAN LATTA and DIANE EILEEN LATTA | **MOTION UNDER § 363(f) TO APPROVE SALE OF REAL PROPERTY AT 3222 N. RIVERBEND PLACE, IN TUCSON, PIMA COUNTY ARIZONA, FREE AND CLEAR OF LIENS** |
| Debtors. | **[This filing relates to the Latta Reorganization Case]** |

Debtors JAMES BRIAN LATTA, and DIANE E. LATTA (collectively, the "Lattas") respectfully ask the Court to enter an Order under § 363(f), Rule 6004, and Local Rule 6004-1[1] authorizing them to sell their residence located at 3222 North Riverbend Place, Tucson AZ 85750 ("Residence"). The Lattas seek to sell the Residence for a purchase price of $668,000 on the terms and conditions set forth in the Purchase and Sale Agreement. which is attached hereto as Exhibit A.

This Motion arises under Title 11 and presents a core proceeding over which this Court has authority to enter a final order under 28 U.S.C. §§ 1334(b), 157(b)(2)(E) and (N), and the General Order Referring Bankruptcy Cases and Authorizing Bankruptcy

---

[1] Unless otherwise denoted, all references in this motion to § are to title 11 of the United States Code and all references to Rules are to the Federal Rules of Bankruptcy Procedure, and all references to Local Rules are references to the Local Rules of the United States Bankruptcy Court for the District of Arizona.

Appeals to be Heard by a Bankruptcy Appellate Panel of the U.S. District Court for the District of Arizona (General Order 01-15).2. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(E) and (N). This Motion is supported by the attached Exhibits and Memorandum of Points and Authorities.

DATED this 25th day of August 2022.

WATERFALL, ECONOMIDIS, CALDWELL, HANSHAW & VILLAMANA, P.C.

By: _/s/ Kasey Nye_____
        Kasey Nye
        *Attorneys for Debtors/Movants*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Background

#### 1.  The Residence and the Liens Against It

1.  The Lattas own the single-family residence located at 3222 North Riverbend Place, Tucson AZ 85750, (the "Residence") situated in Pima County, State of Arizona and legally described:

> Lot 31 of Riverbend Ranch Estates according to the Map recorded in Book 23 of Maps and Plats at Page 48 of the records of Pima County, Arizona.

2.  The Residence is encumbered by the following liens:

   a.  JP Morgan Chase Bank, NA, Deed of Trust recorded with the Pima County Recorder August 4, 2005 at Docket 12609, Page 1934, Sequence 20051500500 (the "JPMC Mortgage").  Estimated Payoff Balance of $342,693.83.

   b.  U.S. Bank Home Mortgage's Deed of Trust recorded with the Pima County Recorder August 22, 2005 ad Docket 12621, Page 2247, Sequence 20051620391 (the "U.S. Bank Mortgage").  Estimated Payoff Balance $107,526.39.

   c.  Judgment in favor of Harco Properties recorded January 14, 2018 with the Pima County Recorder at Sequence 20190140456 (the "Harco Judgment").

### II.    Facts Relating to the Motion for Approval of Asset Sale

3.  On April 26, 2022 the Lattas filed their voluntary joint petition commencing their Subchapter V reorganization case.

4.  In their schedules they claimed a $250,000 Homestead Exemption on the Residence under Ariz. Rev. Stat. § 33-1101(A).

5.  On June 21, 2022 the Court ordered the joint administration of their case with JBL Restaurant Investments, Inc.

6. The Debtors' meeting of creditors was concluded on July 7, 2022. So, the deadline under Rule 4003(b) to object to the Lattas claiming a homestead exemption in the Residence expired on August 8, 2022. No parties have objected to the Debtors homestead exemption. So, the Residence is exempt pursuant to 11 U.S.C. § 522(l).

7. On July 8, 2022, the Debtors filed their application to employ real estate broker from Arizona Flat Fee to sell the Residence, which was approved by the court by order entered on July 22, 2022.

8. On August 23, 2022, the Lattas entered into a purchase and sale agreement to sell the Residence to Craig Thompson and Ana Thompson (the "Buyers") for $668,000, a true and correct copy of which is attached hereto as Exhibit A. The Purchase Agreement seeks to close no later than October 20, 2022. Under the Purchase Agreement the Lattas have agreed to pay one year's homeowner's association dues (approximately $668). The Buyers have no relationship to the Lattas, or any of the Debtors and are not insiders.

9. Under the Purchase Agreement the Debtors will pay Arizona Flat Fee $3,800 commission as compensation for their work selling the Residence. In addition, the Debtors will pay they Buyers' agent 2.5% of the purchase price. By this Motion the Debtors are seeking court approval of the Brokers compensation.

10. The Debtors anticipate that the sale proceeds will be sufficient to pay the first and second position deeds of trust and yield approximately $190,000 to $195,000 exempt sale proceeds.

### III.    Law and Argument

#### 1.    Motion to Approve Sale

The Lattas requests that this Court approve the sale of the Residence pursuant to 11 U.S.C. §363(f) in the time, place, and manner described above.

Although §363 does not explicitly describe a standard for determining when it is appropriate for a court to authorize the sale or disposition of assets, many courts have held

that, that sale under §363(b) is appropriate if the transaction is supported by the debtor's reasonable business judgment. *Committee of Equity Security Holders v. Lionel Corp (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983); *see also Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14 (9th Cir. BAP 1988).

In this instance, the proposed sale benefits the creditors because at current levels the Lattas cannot afford the mortgage payments on the Residence. The monthly payments on a new residence will likely be minimal expanding opportunities to increase the projected disposable income payable to priority and unsecured creditors under the Plan.

The Lattas also request authorization to sell the Residence free and clear of liens, claims, encumbrances and interests, including the claims of JP Morgan Chase Bank, NA, U.S. Bank Home Mortgage, and Harco Properties. Section 363(f) authorizes debtors-in-possession to sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied:

(1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §§ 363(f)(l) - (f)(5).

As to both the JPMC Mortgage and the U.S. Bank Mortgage, the sale satisfies § 363(f)(3) because the purchase price is greater than the aggregate value of the liens on the property. As to Harco Judgement, 11 U.S.C. § 363(f)(1) applies because the Lattas would be able to compel the sale of the Residence free and clear under applicable Arizona law.

Specifically, Ariz. Rev. Stat. § 33-964(B) provides that ""Except as provided in § 33-1103, a recorded judgment ***shall not become a lien on any homestead property***. Any person entitled to a homestead on real property as provided by law holds the homestead

property free and clear of the judgment lien." Ariz. Rev. Stat. § 33-964(B) (2007) [Emphasis Added].

Ariz. Rev. Stat. § 33-1103, as amended in 2007, in turn provides that, that "[t]he homestead provided for in § 33-1101, subsection A is exempt from process and from sale under a judgment or lien, except: . . . [t]o the extent that a judgment or other lien may be satisfied from the equity of the debtor exceeding the homestead exemption." § 33-1103(A), (A)(4) (2007).

In this case, however, there will be no sale proceeds in excess of the Lattas' $250,000 homestead exemption under Ariz. Rev. Stat. § 33-1101. So, the Harco Judgment does not attach to the Residence or its proceeds at all. Thus, the Residence may be sold free and clear of any interest arising from the Harco Judgment.

### 2. Court Approval of Compensation under 11 U.S.C. § 330

11 U.S.C. § 330(a) provides:

(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

The Lattas respectfully request authority to pay Arizona Flat Fee its agreed $3,800 flat fee plus 2.5% of the purchase price to be paid to the Buyer's agent ($16,700) at closing for its real estate services. AZ Flat Fee's retention was approved by the Court by order entered on July 22, 2022. AZ Flat Fee has earned its fee by advertising the residence on MLS and its website. Showing the Residence to prospective buyers and real estate agents, and by negotiating and documenting the Purchase Agreement.

AZ Flat Fee's services were actual, necessary and the compensation requested is reasonable. Customarily such services cost as much as 6% of the purchase price which would be split with the Buyers' agent half of the commission ($40,080). The $20,500 to be paid to AZ Flat Fee and the Buyer's Agent is more than reasonable. As such the Lattas respectfully request that the Court allow the Flat Fee its $3,800 fee and Buyer's agent's 2.5% commission and authorize payment of such fees and commissions at closing.

WHEREFORE, Debtors respectfully requests that this Court enter an Order:

A. Authorizing the sale of the Residence to the Buyers under 11 U.S.C. § 363(f) free and clear of claims, liens and encumbrances, including, without limitation, the JPMC Mortgage, the US Bank Mortgage, and the Harco Judgment;

B. Requiring the exempt homestead proceeds to be deposited into a segregated debtor in possession account;

C. Approving and authorizing payment under 11 U.S.C. § 330 of the $3,800 flat fee to be paid to the Debtors' appointed real estate broker, AZ Flat Fee, and 2.5% commission to be paid to the Buyer's real estate agent; and,

D. such other and further relief as the Court deems appropriate and just.

DATED this 25th day of August, 2022

WATERFALL, ECONOMIDIS, CALDWELL, HANSHAW & VILLAMANA, P.C.

By: /s/ Kasey Nye
Kasey Nye
*Attorneys for Debtors/Movants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2022, I electronically filed the foregoing with the Clerk of the Court using the Court's electronic filing system and emailed the following parties:

Renee Shamblin
Office of the U.S. Trustee
230 North First Avenue, Suite 204
Phoenix, AZ 85003-1706
Renee.S.Shamblin@usdoj.gov
*Attorneys for U.S. Trustee*

Lynton Mark Kotzin
Kotzin Valuation Partners, LLC
2700 N. Central Avenue, Ste 1275
Phoenix, AZ 85004
LKotzin@jsheld.com
*Subchapter V Trustee*

Office of the Attorney General
C/o Matthew A. Silverman
2005 North Central Ave.
Phoenix, AZ 85004-1592
*Attorneys for Arizona Department of Revenue*

MATTHEW H. SLOAN and
BRIAN D. MYERS on behalf of Creditor
Harco Properties, LLC
Jennings Haug Keleher McLeod LLP
2800 N. Central Avenue, Suite 1800
Phoenix, AZ 85004
mhs@jhkmlaw.com   tk@jhkmlaw.com
bdm@jhkmlaw.com

Gordon L. Hardy, D.D.S., Manager
Harco Properties, L.L.C.
4207 E. Palo Verde Dr.
Phoenix, AZ 85018
1gordonhardy@gmail.com

Leonard McDonald on behalf of Wells
Fargo Home Mortgage
ljm@tblaw.com
ecf@tblaw.com

Eric Levy, I
Pima County Attorney's Office
32 N. Stone
Tucson, AZ 85701
Eric.levy@pcao.pima.gov
*Attorneys for Pima County Attorney's Office*

Mark S. Bosco
Leonard J. McDonald
Tiffany & Bosco, P.A.
Seventh Floor Camelback Esplanade II
2525 E. Camelback Road
Phoenix, AZ 85016

U.S. Bank Home Mortgage, a division of
U.S. Bank National Association
4801 Frederica Street
Owensboro, KY 42301

U.S. Bank Home Mortgage, a division of
U.S. Bank National Association
C/o CT Corporation
3800 N. Central Ave., Suite 460
Phoenix, AZ 85012

Mukta Suri
Authorized Agent or U.S. Bank National
Association
Bonial & Associates, P.C.
P.O. Box 9013
Addison, TX 75001
POCInquiries@BonialPC.com


By: /s/ *Clarrissa Palma*

# EXHIBIT A

DigiSign Verified - 7f9f67d7-d504-414e-bac0-919ae2e5f189

# PRE-QUALIFICATION FORM

Document updated: **February 2017**



*The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.*

 

*Your actual rate, payment, and costs could be higher. Get an official Loan Estimate before choosing a loan.*

**PRE-QUALIFICATION INFORMATION**

1. **Purpose**: This Pre-Qualification Form is to be used in conjunction with an AAR Residential Resale Real Estate Purchase Contract or
2. Vacant Land/Lot Purchase Contract ("Contract").
3. ☐ Buyer **HAS NOT** consulted with a lender. (If Buyer marks the box on line 3, Buyer is to complete only lines 4 and 5.)

4. _____     _____
   PRINT BUYER'S NAME                                          PRINT BUYER'S NAME

5. _____     _____
   ^ BUYER'S SIGNATURE                      MO/DA/YR          ^ BUYER'S SIGNATURE                      MO/DA/YR

6. ☑ Lender indicated on lines 36 and 37 has consulted with  Craig and Ana Thompson  ("Buyer") and submits the following:
7. **Buyer is:**      ☑ Married      ☐ Unmarried      ☐ Legally Separated
8. **Buyer:**      ☐ is  ☑ is not relying on the sale or lease of a property to qualify for this loan.
9. **Buyer:**      ☐ is  ☑ is not relying on Seller Concessions for Buyer's loan costs, impounds, Title/Escrow Company costs,
10.     recording fees, and, if applicable, VA loan costs not permitted to be paid by Buyer. (Note: The amount Seller
11.     agrees to contribute, if any, shall be established in the Contract.)
12. **Buyer:**      ☐ is  ☑ is not relying on down payment assistance to qualify for this loan.
13. **Type of Loan:**   ☐ Conventional   ☐ FHA   ☑ VA   ☐ USDA   ☐ Other: _____
14. **Occupancy Type:**   ☑ Primary      ☐ Secondary      ☐ Non-Owner Occupied
15. **Property Type:**   ☑ Single Family Residence   ☐ Condominium   ☐ Planned Unit Development   ☐ Manufactured Home
16.      ☐ Mobile Home      ☐ Vacant Land/Lot   ☐ Other: _____

|  | YES | NO | N/A |  |
|---|---|---|---|---|
| 17. | ☐ | ☐ | ☐ | Lender provided Buyer with the HUD form "For Your Protection: Get a Home Inspection" (FHA loans only). |
| 18. | ☑ | ☐ | ☐ | Lender completed a verbal discussion with Buyer including a discussion of income, assets and debts. |
| 19. | ☑ | ☐ | ☐ | Lender obtained a Tri-Merged Residential Credit Report. |

20. **Based on the information provided, Buyer can pre-qualify for a loan amount of:** $ 647,200.00 , assuming a monthly principal
21. and interest loan payment of $ TBD , **provided that the total monthly payment** (which includes principal, interest, mortgage
22. insurance, property taxes, insurance, HOA fees, and flood insurance, if applicable) **does not exceed:** $ TBD
23. **Interest rate not to exceed:** TBD %, ☑ Fixed Interest Rate   ☐ Adjustable Interest Rate   ☐ Pre-Payment Penalty
24. **Initial Documentation Received:** Lender received the following information from Buyer (additional documentation may be requested):

| YES | NO | N/A |  | YES | NO | N/A |  |
|---|---|---|---|---|---|---|---|
| 25. ☑ | ☐ | ☐ | Paystubs | ☐ | ☐ | ☑ | Down Payment/Reserves Documentation |
| 26. ☑ | ☐ | ☐ | W-2s | ☐ | ☐ | ☑ | Gift Documentation |
| 27. ☑ | ☐ | ☐ | Personal Tax Returns | ☐ | ☐ | ☑ | Credit/Liability Documentation |
| 28. ☐ | ☐ | ☑ | Corporate Tax Returns | ☐ | ☐ | ☐ | Other: _____ |

29. Additional comments: _____
30. Buyer has instructed, and Lender agrees to provide loan status updates on the AAR Loan Status Update form to Seller and Broker(s)
31. within ten (10) days of Contract acceptance pursuant to Section 2e of the Contract and upon request thereafter.

**LENDER INFORMATION**

32. The lender identified below has prepared the information listed above with Buyer(s) and has completed the above action points noted.
33. This information does not constitute loan approval. All information provided must be approved by an underwriter, and any material change
34. change in Buyer's credit or financial profile will render this pre-qualification null and void.
35. The above pre-qualification expires on: 12/15/2022 .
                                                          DATE

36. **Lender:** CrossCountryMOrtgage                    2213428                      3029
            COMPANY                                         ARIZONA LICENSE #             NMLS #
37.         James Mendenhall                               1563079                      1563079
            LOAN OFFICER                                    ARIZONA LICENSE #             NMLS #
38. 5151 E Broadway                                        Tucson                       AZ      85711
    ADDRESS                                                 CITY                         STATE   ZIP
39. james.mendenhall@myccmortgage.com                      520-861-0166
    EMAIL                                                   PHONE                        FAX
40. _James Mendenhall_          08/20/2022
    ^ LOAN OFFICER'S SIGNATURE              MO/DA/YR

41. Buyer acknowledges receipt of a copy hereof and grants permission to Broker to submit this Pre-Qualification Form with Contract.
42. _Craig Thompson_      08/20/2022      _Ana Thompson_      08/20/2022
    ^ BUYER'S SIGNATURE          MO/DA/YR        ^ BUYER'S SIGNATURE          MO/DA/YR

Pre-Qualification Form • Updated: February 2017 • Copyright © 2017 Arizona Association of REALTORS®. All rights reserved.

Authentisign ID: ED992689-5522-ED11-BD6E-501AC56BB54D

# RESIDENTIAL RESALE REAL ESTATE PURCHASE CONTRACT

Document updated:
**February 2020**



*The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.*



## 1. PROPERTY

**1a.**

1. **BUYER:** _Craig Thompson, Ana Thompson_
BUYER'S NAME(S)

2. **SELLER:** _____ or ☑ as identified in section 9c.
SELLER'S NAME(S)

3. Buyer agrees to buy and Seller agrees to sell the real property with all improvements, fixtures, and appurtenances thereon
4. or incidental thereto, plus the personal property described herein (collectively the "Premises").

**1b.**

5. Premises Address: _3222 N Riverbend Place_                Assessor's #: _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_

6. City: _Tucson_                County: _Pima_                AZ, Zip Code: _85750_

7. Legal Description: _Riverbend Ranch Estates Lot 31_

8. _____

9. _____

**1c.**

10. $ _660,000.00_ Full Purchase Price, paid as outlined below

11. $ _5,000.00_ Earnest Money

12. $ _40,000.00_ **Down Payment due at COE**

13. $ _615,000.00_ **Total Amount financed**

14. _____

15. _____

16. _____

17. Earnest Money is in the form of: ☑ Personal Check ☐ Wire Transfer ☐ Other _____

18. Upon acceptance of this offer, the Earnest Money, if any, will be deposited with: ☑ Escrow Company ☐ Broker's Trust Account.

19. **IF THIS IS AN ALL CASH SALE:** A Letter of Credit or a source of funds from a financial institution documenting the availability of
20. funds to close escrow **is** attached hereto.

**1d.**

21. **Close of Escrow:** Close of Escrow ("COE") shall occur when the deed is recorded at the appropriate county recorder's office.
22. Buyer and Seller shall comply with all terms and conditions of this Contract, execute and deliver to Escrow Company all closing
23. documents, and perform all other acts necessary in sufficient time to allow COE to occur on

24. _October_            _20_, 20 _22_ ("COE Date"). If Escrow Company or recorder's office is closed on the COE Date,
MONTH            DAY            YEAR

25. COE shall occur on the next day that both are open for business.

26. Buyer shall deliver to Escrow Company a cashier's check, wired funds or other immediately available funds to pay any down
27. payment, additional deposits or Buyer's closing costs, and instruct the lender, if applicable, to deliver immediately available funds to
28. Escrow Company, in a sufficient amount and in sufficient time to allow COE to occur on the COE Date.

29. Buyer acknowledges that failure to pay the required closing funds by the scheduled COE, if not cured after a cure notice is delivered
30. pursuant to Section 7a, shall be construed as a material breach of this Contract and the Earnest Money shall be subject to forfeiture.

31. All funds are to be in U.S. currency.

**1e.**

32. **Possession:** Seller shall deliver possession, occupancy, existing keys and/or means to operate all locks, mailbox, security
33. system/alarms, and all common area facilities to Buyer at COE or ☐ _____.
34. Broker(s) recommend that the parties seek independent counsel from insurance, legal, tax, and accounting professionals regarding
35. the risks of pre-possession or post-possession of the Premises.

**1f.**

36. **Addenda Incorporated:** ☐ Additional Clause ☐ Buyer Contingency ☐ Domestic Water Well ☑ H.O.A.
37. ☐ Lead-Based Paint Disclosure ☐ Loan Assumption ☐ On-site Wastewater Treatment Facility ☐ Seller Financing ☐ Short Sale
38. ☐ Solar Addendum ☐ Other: _____

>>

SELLER  SELLER                                                        BUYER  BUYER

**Residential Resale Real Estate Purchase Contract >>**

**1g.**

39. **Fixtures and Personal Property:** For purposes of this Contract, fixtures shall mean property attached/affixed to the Premises.
40. Seller agrees that all existing: fixtures on the Premises, personal property specified herein, and means to operate fixtures and
41. property (i.e., remote controls) shall convey in this sale. Including the following:

42. • built-in appliances, ceiling fans and remotes • media antennas/satellite dishes (affixed) • storage sheds
43. • central vacuum, hose, and attachments • outdoor fountains and lighting • storm windows and doors
44. • draperies and other window coverings • outdoor landscaping (i.e., shrubbery, • stoves: gas-log, pellet, wood-burning
45. • fireplace equipment (affixed)   trees and unpotted plants) • timers (affixed)
46. • floor coverings (affixed) • shutters and awnings • towel, curtain and drapery rods
47. • free-standing range/oven • smart home devices, access to which • wall mounted TV brackets and hardware
48. • garage door openers and remotes   shall be transferred (i.e., video doorbell,   (excluding TVs)
49. • light fixtures   automated thermostat) • water-misting systems
50. • mailbox • speakers (flush-mounted) • window and door screens, sun shades

51. If owned by Seller, the following items also are included in this sale:

52. • affixed alternate power systems serving • in-ground pool and spa/hot tub equipment • security and/or fire systems and/or alarms
53.   the Premises (i.e., solar)   and covers (including any mechanical or • water purification systems
54.   other cleaning systems) • water softeners

55. **Additional existing personal property included in this sale** (if checked):

56. ☐ refrigerator (description): _____
57. ☐ washer (description): _____
58. ☐ dryer (description): _____
59. ☐ above-ground spa/hot tub including equipment, covers, and any mechanical or other cleaning systems (description): _____
60. _____
61. ☐ other personal property not otherwise addressed (description): _____
62. ☐ other personal property not otherwise addressed (description): _____

63. **Additional existing personal property included shall not be considered part of the Premises and shall be transferred with no**
64. **monetary value, and free and clear of all liens or encumbrances.**

65. Leased items shall **NOT** be included in this sale. Seller shall deliver notice of all leased items within three (3) days after Contract
66. acceptance. Buyer shall provide notice of any leased items disapproved within the Inspection Period or five (5) days after receipt of
67. the notice, whichever is later.

68. **IF THIS IS AN ALL CASH SALE:** Section 2 does not apply - go to Section 3.

## 2. FINANCING

**2a.** 69. **Pre-Qualification:** An AAR Pre-Qualification Form *is* attached hereto and incorporated herein by reference.

**2b.** 70. **Loan Contingency:** Buyer's obligation to complete this sale is contingent upon Buyer obtaining loan approval without Prior to
71. Document ("PTD") conditions no later than three (3) days prior to the COE Date for the loan described in the AAR Loan Status
72. Update ("LSU") form or the AAR Pre-Qualification Form, whichever is delivered later. **No later than three (3) days prior to the**
73. **COE Date, Buyer shall either: (i) sign all loan documents; or (ii) deliver to Seller or Escrow Company notice of loan**
74. **approval without PTD conditions AND date(s) of receipt of Closing Disclosure(s) from Lender; or (iii) deliver to Seller or**
75. **Escrow Company notice of inability to obtain loan approval without PTD conditions.**

**2c.** 76. **Unfulfilled Loan Contingency:** This Contract shall be cancelled and Buyer shall be entitled to a return of the Earnest Money if
77. after diligent and good faith effort, Buyer is unable to obtain loan approval without PTD conditions and delivers notice of inability
78. to obtain loan approval no later than three (3) days prior to the COE Date. If Buyer fails to deliver such notice, Seller may issue a
79. cure notice to Buyer as required by Section 7a and, in the event of Buyer's breach, Seller shall be entitled to the Earnest Money
80. pursuant to Section 7b. If, prior to expiration of any Cure Period, Buyer delivers notice of inability to obtain loan approval, Buyer
81. shall be entitled to a return of the Earnest Money. Buyer acknowledges that prepaid items paid separately from the Earnest Money
82. are not refundable.

**2d.** 83. **Interest Rate / Necessary Funds:** Buyer agrees that (i) the inability to obtain loan approval due to the failure to lock the interest
84. rate and "points" by separate written agreement with the lender; or (ii) the failure to have the down payment or other funds
85. due from Buyer necessary to obtain the loan approval without conditions and close this transaction is not an unfulfilled loan
86. contingency.

**2e.** 87. **Loan Status Update:** Buyer shall deliver to Seller the LSU, with at a minimum lines 1-40 completed, describing the current status
88. of the Buyer's proposed loan within ten (10) days after Contract acceptance and instruct lender to provide an updated LSU to
89. Broker(s) and Seller upon request.

>>

**Residential Resale Real Estate Purchase Contract >>**

**2f.** 90. **Loan Application:** Unless previously completed, within three (3) days after Contract acceptance Buyer shall (i) provide lender
91. with Buyer's name, income, social security number, Premises address, estimate of value of the Premises, and mortgage loan
92. amount sought; and (ii) grant lender permission to access Buyer's Trimerged Residential Credit Report.

**2g.** 93. **Loan Processing During Escrow:** Within ten (10) days after receipt of the **Loan Estimate** Buyer shall (i) provide lender with
94. notice of intent to proceed with the loan transaction in a manner satisfactory to lender; and (ii) provide to lender all requested
95. signed disclosures and the documentation listed in the LSU at lines 32-35. Buyer agrees to diligently work to obtain the loan and
96. will promptly provide the lender with all additional documentation requested.

**2h.** 97. **Type of Financing:** ☐ Conventional ☐ FHA ☑ VA ☐ USDA ☐ Assumption ☐ Seller Carryback ☐ _____
98. (If financing is to be other than new financing, see attached addendum.)

**2i.** 99. **Loan Costs:** All costs of obtaining the loan shall be paid by Buyer, unless otherwise provided for herein.

**2j.** 100. **Seller Concessions (if any):** In addition to the other costs Seller has agreed to pay herein, Seller will credit Buyer _____%
101. of the Purchase Price **OR** $ _____ (Seller Concessions). The Seller Concessions may be used for any Buyer fee, cost,
102. charge, or expenditure to the extent allowed by Buyer's lender.

**2k.** 103. **Changes:** Buyer shall immediately notify Seller of any changes in the loan program, financing terms, or lender described in the
104. Pre-Qualification Form attached hereto or LSU provided within ten (10) days after Contract acceptance and shall only make any
105. such changes without the prior written consent of Seller if such changes do not adversely affect Buyer's ability to obtain loan
106. approval without PTD conditions, increase Seller's closing costs, or delay COE.

**2l.** 107. **Appraisal Contingency:** Buyer's obligation to complete this sale is contingent upon an appraisal of the Premises acceptable to
108. lender for at least the purchase price. If the Premises fail to appraise for the purchase price in any appraisal required by lender,
109. Buyer has five (5) days after notice of the appraised value to cancel this Contract and receive a return of the Earnest Money or
110. the appraisal contingency shall be waived, unless otherwise prohibited by federal law.

**2m.** 111. **Appraisal Cost(s):** Initial appraisal fee shall be paid by ☑ Buyer ☐ Seller ☐ Other _____
112. at the time payment is required by lender and is non-refundable. If Seller is paying the initial appraisal fee, the fee ☐ will ☐ will not
113. be applied against Seller's Concessions at COE, if applicable. If Buyer's lender requires an updated appraisal prior to COE, it will be
114. performed at Buyer's expense. Any appraiser/lender required inspection cost(s) shall be paid for by Buyer.

## 3. TITLE AND ESCROW

**3a.** 115. **Escrow:** This Contract shall be used as escrow instructions. The Escrow Company employed by the parties to carry out the
116. terms of this Contract shall be:

117. **Stewart Title**
ESCROW/TITLE COMPANY

| | | | |
|---|---|---|---|
| 118. **3939 E Broadway Blvd**<br>ADDRESS | **Tucson**<br>CITY | **AZ**<br>STATE | **85711**<br>ZIP |
| 119. **paula.woodard@stewart.com**<br>EMAIL | **(520) 327-7373**<br>PHONE | FAX | |

**3b.** 120. **Title and Vesting:** Buyer will take title as determined before COE. If Buyer is married and intends to take title as his/her sole
121. and separate property, a disclaimer deed may be required. Taking title may have significant legal, estate planning and tax
122. consequences. Buyer should obtain independent legal and tax advice.

**3c.** 123. **Title Commitment and Title Insurance:** Escrow Company is hereby instructed to obtain and deliver to Buyer and Seller directly,
124. addressed pursuant to 8s and 9c or as otherwise provided, a Commitment for Title Insurance together with complete and legible copies
125. of all documents that will remain as exceptions to Buyer's policy of Title Insurance ("Title Commitment"), including but not limited to
126. Conditions, Covenants and Restrictions ("CC&Rs"); deed restrictions; and easements. Buyer shall have five (5) days after receipt of the
127. Title Commitment and after receipt of notice of any subsequent exceptions to provide notice to Seller of any items disapproved. Seller
128. shall convey title by warranty deed, subject to existing taxes, assessments, covenants, conditions, restrictions, rights of way, easements
129. and all other matters of record. Buyer shall be provided at Seller's expense an American Land Title Association ("ALTA") Homeowner's
130. Title Insurance Policy or, if not available, a Standard Owner's Title Insurance Policy, showing title vested in Buyer. Buyer may acquire
131. extended coverage at Buyer's own additional expense. If applicable, Buyer shall pay the cost of obtaining the ALTA Lender Title
132. Insurance Policy.

>>

SELLER SELLER · BUYER BUYER

### *Residential Resale Real Estate Purchase Contract* >>

**3d.** 133. **Additional Instructions:** (i) Escrow Company shall promptly furnish notice of pending sale that contains the name and address of
134. Buyer to any homeowner's association(s) in which the Premises are located. (ii) If Escrow Company is also acting as the title agency
135. but is not the title insurer issuing the title insurance policy, Escrow Company shall deliver to Buyer and Seller, upon deposit of funds, a
136. closing protection letter from the title insurer indemnifying Buyer and Seller for any losses due to fraudulent acts or breach of escrow
137. instructions by Escrow Company. (iii) All documents necessary to close this transaction shall be executed promptly by Seller and
138. Buyer in the standard form used by Escrow Company. Escrow Company shall modify such documents to the extent necessary to be
139. consistent with this Contract. (iv) Escrow Company fees, unless otherwise stated herein, shall be allocated equally between Seller and
140. Buyer. (v) Escrow Company shall send to all parties and Broker(s) copies of all notices and communications directed to Seller, Buyer
141. and Broker(s). (vi) Escrow Company shall provide Broker(s) access to escrowed materials and information regarding the escrow. (vii)
142. If an Affidavit of Disclosure is provided, Escrow Company shall record the Affidavit at COE.

**3e.** 143. **Tax Prorations:** Real property taxes payable by Seller shall be prorated to COE based upon the latest tax information available.

**3f.** 144. **Release of Earnest Money:** In the event of a dispute between Buyer and Seller regarding any Earnest Money deposited with
145. Escrow Company, Buyer and Seller authorize Escrow Company to release the Earnest Money pursuant to the terms and conditions
146. of this Contract in its sole and absolute discretion. Buyer and Seller agree to hold harmless and indemnify Escrow Company against
147. any claim, action or lawsuit of any kind, and from any loss, judgment, or expense, including costs and attorney fees, arising from or
148. relating in any way to the release of the Earnest Money.

**3g.** 149. **Prorations of Assessments and Fees:** All assessments and fees that are not a lien as of COE, including homeowner's
150. association fees, rents, irrigation fees, and, if assumed, insurance premiums, interest on assessments, interest on encumbrances,
151. and service contracts, shall be prorated as of COE or ☐ Other: _____

**3h.** 152. **Assessment Liens:** The amount of any assessment lien or bond including those charged by a special taxing district, such as a
153. Community Facilities District, shall be prorated as of COE.

## 4. DISCLOSURE

**4a.** 154. **Seller's Property Disclosure Statement ("SPDS"):** Seller shall deliver a completed AAR Residential SPDS form to Buyer
155. within three (3) days after Contract acceptance. Buyer shall provide notice of any SPDS items disapproved within the Inspection
156. Period or five (5) days after receipt of the SPDS, whichever is later.

**4b.** 157. **Insurance Claims History:** Seller shall deliver to Buyer a written five (5) year insurance claims history regarding the Premises (or a
158. claims history for the length of time Seller has owned the Premises if less than five (5) years) from Seller's insurance company or an
159. insurance support organization or consumer reporting agency, or if unavailable from these sources, from Seller, within five (5) days
160. after Contract acceptance. Buyer shall provide notice of any items disapproved within the Inspection Period or five (5) days after
161. receipt of the claims history, whichever is later.

**4c.** 162. **Foreign Sellers:** The Foreign Investment in Real Property Tax Act ("FIRPTA") is applicable if Seller is a non-resident alien
163. individual, foreign corporation, foreign partnership, foreign trust, or foreign estate ("Foreign Person"). Seller agrees to complete,
164. sign, and deliver to Escrow Company a certificate indicating whether Seller is a Foreign Person. FIRPTA requires that a foreign
165. seller may have federal income taxes up to 15% of the purchase price withheld, unless an exception applies. Seller is responsible
166. for obtaining independent legal and tax advice.

**4d.** 167. **Lead-Based Paint Disclosure:** If the Premises were built prior to 1978, Seller shall: (i) notify Buyer of any known lead-based paint
168. ("LBP") or LBP hazards in the Premises; (ii) provide Buyer with any LBP risk assessments or inspections of the Premises in Seller's
169. possession; (iii) provide Buyer with the Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards, and any
170. report, records, pamphlets, and/or other materials referenced therein, including the pamphlet "Protect Your Family from Lead in Your
171. Home" (collectively "LBP Information"). Buyer shall return a signed copy of the Disclosure of Information on Lead-Based Paint and
172. Lead-Based Paint Hazards to Seller prior to COE.

173. ☐ LBP Information was provided prior to Contract acceptance and Buyer acknowledges the opportunity to conduct LBP risk
174. assessments or inspections during Inspection Period.

175. ☐ Seller shall provide LBP Information within five (5) days after Contract acceptance. Buyer may within ten (10) days

176. or _____ days after receipt of the LBP Information conduct or obtain a risk assessment or inspection of the Premises for the
177. presence of LBP or LBP hazards ("Assessment Period"). Buyer may within five (5) days after receipt of the LBP Information or five
178. (5) days after expiration of the Assessment Period cancel this Contract.

179. Buyer is further advised to use certified contractors to perform renovation, repair or painting projects that disturb lead-based paint in
180. residential properties built before 1978 and to follow specific work practices to prevent lead contamination.

181.    If Premises were constructed prior to 1978, **(BUYER'S INITIALS REQUIRED)** _____  _____
                                                                                                BUYER      BUYER

182.    If Premises were constructed in 1978 or later, **(BUYER'S INITIALS REQUIRED)** *CT*  *AT*
                                                                                                BUYER      BUYER

>>

Case 4:22-bk-00880-BMW   Doc 67   Filed 08/25/22   Entered 08/25/22 12:21:10   Desc
Main Document    Page 15 of 29

*Residential Resale Real Estate Purchase Contract >>*

**4e.** 183. **Affidavit of Disclosure:** If the Premises are located in an unincorporated area of the county, and five (5) or fewer parcels of
184. property other than subdivided property are being transferred, Seller shall deliver a completed Affidavit of Disclosure in the form
185. required by law to Buyer within five (5) days after Contract acceptance. Buyer shall provide notice of any Affidavit of Disclosure items
186. disapproved within the Inspection Period or five (5) days after receipt of the Affidavit of Disclosure, whichever is later.

**4f.** 187. **Changes During Escrow:** Seller shall immediately notify Buyer of any changes in the Premises or disclosures made herein,
188. in the SPDS, or otherwise. Such notice shall be considered an update of the SPDS. Unless Seller is already obligated by this
189. Contract or any amendments hereto, to correct or repair the changed item disclosed, Buyer shall be allowed five (5) days after
190. delivery of such notice to provide notice of disapproval to Seller.

## 5. WARRANTIES

**5a.** 191. **Condition of Premises: BUYER AND SELLER AGREE THE PREMISES ARE BEING SOLD IN ITS PRESENT PHYSICAL**
192. **CONDITION AS OF THE DATE OF CONTRACT ACCEPTANCE.** Seller makes no warranty to Buyer, either express or implied, as
193. to the condition, zoning, or fitness for any particular use or purpose of the Premises. However, Seller shall maintain and repair the
194. Premises so that at the earlier of possession or COE: (i) the Premises, including all personal property included in the sale, will be in
195. substantially the same condition as on the date of Contract acceptance; and  (ii) all personal property not included in the sale and
196. debris will be removed from the Premises. Buyer is advised to conduct independent inspections and investigations regarding the
197. Premises within the Inspection Period as specified in Section 6a. Buyer and Seller acknowledge and understand they may, but are
198. not obligated to, engage in negotiations for repairs/improvements to the Premises. Any/all agreed upon repairs/improvements will be
199. addressed pursuant to Section 6j.

**5b.** 200. **Warranties that Survive Closing:** Seller warrants that Seller has disclosed to Buyer and Broker(s) all material latent defects and
201. any information concerning the Premises known to Seller, excluding opinions of value, which materially and adversely affect the
202. consideration to be paid by Buyer. Prior to COE, Seller warrants that payment in full will have been made for all labor, professional
203. services, materials, machinery, fixtures, or tools furnished within the 150 days immediately preceding COE in connection with the
204. construction, alteration, or repair of any structure on or improvement to the Premises. Seller warrants that the information regarding
205. connection to a sewer system or on-site wastewater treatment facility (conventional septic or alternative) is correct to the best of
206. Seller's knowledge.

**5c.** 207. **Buyer Warranties:** Buyer warrants that Buyer has disclosed to Seller any information that may materially and adversely affect
208. Buyer's ability to close escrow or complete the obligations of this Contract. At the earlier of possession of the Premises or COE,
209. Buyer warrants to Seller that Buyer has conducted all desired independent inspections and investigations and accepts the Premises.
210. **Buyer warrants that Buyer is not relying on any verbal representations concerning the Premises except disclosed as follows:**

211. __None_____

212. _____

## 6. DUE DILIGENCE

**6a.** 213. **Inspection Period:** Buyer's Inspection Period shall be ten (10) days or _____ days after Contract acceptance. During the
214. Inspection Period Buyer, at Buyer's expense, shall:  (i) conduct all desired physical, environmental, and other types of inspections
215. and investigations to determine the value and condition of the Premises; (ii) make inquiries and consult government agencies,
216. lenders, insurance agents, architects, and other appropriate persons and entities concerning the suitability of the Premises and
217. the surrounding area; (iii) investigate applicable building, zoning, fire, health, and safety codes to determine any potential hazards,
218. violations or defects in the Premises; and (iv) verify any material multiple listing service ("MLS") information. If the presence of
219. sex offenders in the vicinity or the occurrence of a disease, natural death, suicide, homicide or other crime on or in the vicinity is
220. a material matter to Buyer, it must be investigated by Buyer during the Inspection Period. Buyer shall keep the Premises free and
221. clear of liens, shall indemnify and hold Seller harmless from all liability, claims, demands, damages, and costs, and shall repair all
222. damages arising from the inspections. Buyer shall provide Seller and Broker(s) upon receipt, at no cost, copies of all inspection
223. reports concerning the Premises obtained by Buyer. Buyer is advised to consult the Arizona Department of Real Estate *Buyer*
224. *Advisory* to assist in Buyer's due diligence inspections and investigations.

**6b.** 225. **Square Footage: BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE OF THE PREMISES, BOTH THE**
226. **REAL PROPERTY (LAND) AND IMPROVEMENTS THEREON, IS APPROXIMATE. IF SQUARE FOOTAGE IS A MATERIAL**
227. **MATTER TO BUYER, IT MUST BE INVESTIGATED DURING THE INSPECTION PERIOD.**

**6c.** 228. **Wood-Destroying Organism or Insect Inspection:  IF CURRENT OR PAST WOOD-DESTROYING ORGANISMS OR INSECTS**
229. **(SUCH AS TERMITES) ARE A MATERIAL MATTER TO BUYER, THESE ISSUES MUST BE INVESTIGATED DURING THE**
230. **INSPECTION PERIOD.** Buyer shall order and pay for all wood-destroying organism or insect inspections performed during the
231. Inspection Period. If the lender requires an updated Wood-Destroying Organism or Insect Inspection Report prior to COE, it will be
232. performed at Buyer's expense.

**6d.** 233. **Flood Hazard: FLOOD HAZARD DESIGNATIONS OR THE COST OF FLOOD HAZARD INSURANCE SHALL BE**
234. **DETERMINED BY BUYER DURING THE INSPECTION PERIOD.** If the Premises are situated in an area identified as having
235. any special flood hazards by any governmental entity, **THE LENDER MAY REQUIRE THE PURCHASE OF FLOOD HAZARD**
236. **INSURANCE.** Special flood hazards may also affect the ability to encumber or improve the Premises.

>>

*Residential Resale Real Estate Purchase Contract >>*

**6e.** 237. **Insurance: IF HOMEOWNER'S INSURANCE IS A MATERIAL MATTER TO BUYER, BUYER SHALL APPLY FOR AND**
238. **OBTAIN WRITTEN CONFIRMATION OF THE AVAILABILITY AND COST OF HOMEOWNER'S INSURANCE FOR THE**
239. **PREMISES FROM BUYER'S INSURANCE COMPANY DURING THE INSPECTION PERIOD.** Buyer understands that any
240. homeowner's, fire, casualty, flood or other insurance desired by Buyer or required by lender should be in place at COE.

**6f.** 241. **Sewer or On-site Wastewater Treatment System:** The Premises are connected to a:

242. ☑ sewer system ☐ conventional septic system ☐ alternative system

243. **IF A SEWER CONNECTION IS A MATERIAL MATTER TO BUYER, IT MUST BE INVESTIGATED DURING THE INSPECTION**
244. **PERIOD.** If the Premises are served by a conventional septic or alternative system, the AAR On-site Wastewater Treatment Facility
245. Addendum is incorporated herein by reference.

246. **(BUYER'S INITIALS REQUIRED)** *CT* _____ *AT* _____
BUYER                           BUYER

**6g.** 247. **Swimming Pool Barrier Regulations:** During the Inspection Period, Buyer agrees to investigate all applicable state, county, and
248. municipal Swimming Pool barrier regulations and agrees to comply with and pay all costs of compliance with said regulations prior to
249. occupying the Premises, unless otherwise agreed in writing. If the Premises contains a Swimming Pool, Buyer acknowledges receipt
250. of the Arizona Department of Health Services approved private pool safety notice.

251. **(BUYER'S INITIALS REQUIRED)** *CT* _____ *AT* _____
BUYER                           BUYER

**6h.** 252. **BUYER ACKNOWLEDGMENT: BUYER RECOGNIZES, ACKNOWLEDGES, AND AGREES THAT BROKER(S) ARE NOT**
253. **QUALIFIED, NOR LICENSED, TO CONDUCT DUE DILIGENCE WITH RESPECT TO THE PREMISES OR THE SURROUNDING**
254. **AREA. BUYER IS INSTRUCTED TO CONSULT WITH QUALIFIED LICENSED PROFESSIONALS TO ASSIST IN BUYER'S**
255. **DUE DILIGENCE EFFORTS. BECAUSE CONDUCTING DUE DILIGENCE WITH RESPECT TO THE PREMISES AND THE**
256. **SURROUNDING AREA IS BEYOND THE SCOPE OF BROKER'S EXPERTISE AND LICENSING, BUYER EXPRESSLY**
257. **RELEASES AND HOLDS HARMLESS BROKER(S) FROM LIABILITY FOR ANY DEFECTS OR CONDITIONS THAT COULD**
258. **HAVE BEEN DISCOVERED BY INSPECTION OR INVESTIGATION.**

259. **(BUYER'S INITIALS REQUIRED)** *CT* _____ *AT* _____
BUYER                           BUYER

**6i.** 260. **Inspection Period Notice:** Prior to expiration of the Inspection Period, Buyer shall deliver to Seller a signed notice of any items
261. disapproved. AAR's Buyer's Inspection Notice and Seller's Response form is available for this purpose. Buyer shall conduct all
262. desired inspections and investigations prior to delivering such notice to Seller and all Inspection Period items disapproved shall be
263. provided in a single notice.

**6j.** 264. **Buyer Disapproval:** If Buyer, in Buyer's sole discretion, disapproves of items as allowed herein, Buyer shall deliver to Seller a
265. signed notice of the items disapproved and state in the notice that Buyer elects to either:
266. (1) Immediately cancel this Contract, in which case:

267. (a) If Buyer's notice specifies disapproval of items as allowed herein, the Earnest Money shall be released to Buyer.

268. (b) If Buyer's notice fails to specify items disapproved as allowed herein, the cancellation will remain in effect but Buyer has
269. failed to comply with a provision of this Contract and Seller may deliver to Buyer a cure notice as required by Section 7a.
270. If Buyer fails to cure their non-compliance within three (3) days after delivery of such notice, Buyer shall be in breach and
271. Seller shall be entitled to the Earnest Money. If, prior to expiration of the Cure Period, Buyer delivers notice specifying
272. items disapproved as allowed herein, Buyer shall be entitled to a return of the Earnest Money.

273. **OR**

274. (2) Provide Seller an opportunity to correct the items disapproved, in which case:

275. (a) Seller shall respond in writing within five (5) days or _____ days after delivery to Seller of Buyer's notice of items
276. disapproved. Seller's failure to respond to Buyer in writing within the specified time period shall conclusively be deemed
277. Seller's refusal to correct any of the items disapproved.

278. (b) **If Seller agrees in writing to correct items disapproved, Seller shall correct the items, complete any repairs in a**
279. **workmanlike manner and deliver any paid receipts evidencing the corrections and repairs to Buyer three (3) days**
280. **or _____ days prior to the COE Date.**

281. (c) If Seller is unwilling or unable to correct any of the items disapproved, Buyer may cancel this Contract within five (5) days
282. after delivery of Seller's response or after expiration of the time for Seller's response, whichever occurs first, and the
283. Earnest Money shall be released to Buyer. If Buyer does not cancel this Contract within the five (5) days as provided,
284. Buyer shall close escrow without correction of those items that Seller has not agreed in writing to correct.

285. VERBAL DISCUSSIONS WILL NOT EXTEND THESE TIME PERIODS. Only a written agreement signed by both parties will extend
286. response times or cancellation rights.

287. BUYER'S FAILURE TO GIVE NOTICE OF DISAPPROVAL OF ITEMS OR CANCELLATION OF THIS CONTRACT WITHIN
288. THE SPECIFIED TIME PERIOD SHALL CONCLUSIVELY BE DEEMED BUYER'S ELECTION TO PROCEED WITH THE
289. TRANSACTION WITHOUT CORRECTION OF ANY DISAPPROVED ITEMS.

>>

Residential Resale Real Estate Purchase Contract • Updated: February 2020

*DC* *HL*  Case 4:22-bk-00880-BMW  Doc 67  Filed 08/25/22  Entered 08/25/22-10:11:10  *CT* *AT*  *Desc*
SELLER   SELLER                Main Document   Page 6 of 10   Page 17 of 29      BUYER   BUYER

*Residential Resale Real Estate Purchase Contract >>*

**6k.** 290. **Home Warranty Plan:** Buyer and Seller are advised to investigate the various home warranty plans available for purchase. The
291. parties acknowledge that different home warranty plans have different coverage options, exclusions, limitations, service fees and
292. most plans exclude pre-existing conditions.

293. ☑ A Home Warranty Plan will be ordered by ☑ Buyer or ☐ Seller with the following optional coverage
294. __Platinum plus pool_____, to be issued by __Old Republic Home Warranty_____ at a cost
295. not to exceed $ _____, to be paid for by ☐ Buyer ☑ Seller ☐ Split evenly between Buyer and Seller
296. ☐ Buyer declines the purchase of a Home Warranty Plan.

297.                                                **(BUYER'S INITIALS REQUIRED)** *CT*        *AT*
                                                                                          BUYER          BUYER

**6l.** 298. **Walkthrough(s):** Seller grants Buyer and Buyer's inspector(s) reasonable access to conduct walkthroughs(s) of the Premises for
299. the purpose of satisfying Buyer that any corrections or repairs agreed to by Seller have been completed, and the Premises are
300. in substantially the same condition as of the date of Contract acceptance. If Buyer does not conduct such walkthrough(s), Buyer
301. releases Seller and Broker(s) from liability for any defects that could have been discovered.

**6m.** 302. **Seller's Responsibility Regarding Inspections and Walkthrough(s):** Seller shall make the Premises available for all inspections
303. and walkthrough(s) upon reasonable notice by Buyer. Seller shall, at Seller's expense, have all utilities on, including any propane,
304. until COE to enable Buyer to conduct these inspections and walkthrough(s).

**6n.** 305. **IRS and FIRPTA Reporting:** The Foreign Investment in Real Property Tax Act ("FIRPTA") provides that, if a seller is a Foreign
306. Person, a buyer of residential real property must withhold federal income taxes up to 15% of the purchase price, unless an exception
307. applies. If FIRPTA is applicable and Buyer fails to withhold, Buyer may be held liable for the tax. Buyer agrees to perform any acts
308. reasonable or necessary to comply with FIRPTA and IRS reporting requirements and Buyer is responsible for obtaining independent
309. legal and tax advice.

## 7. REMEDIES

**7a.** 310. **Cure Period:** A party shall have an opportunity to cure a potential breach of this Contract. If a party fails to comply with any
311. provision of this Contract, the other party shall deliver a notice to the non-complying party specifying the non-compliance. If the
312. non-compliance is not cured within three (3) days after delivery of such notice ("Cure Period"), the failure to comply shall become a
313. breach of Contract. If Escrow Company or recorder's office is closed on the last day of the Cure Period, and COE must occur
314. to cure a potential breach, COE shall occur on the next day that both are open for business.

**7b.** 315. **Breach:** In the event of a breach of Contract, the non-breaching party may cancel this Contract and/or proceed against the
316. breaching party in any claim or remedy that the non-breaching party may have in law or equity, subject to the Alternative Dispute
317. Resolution obligations set forth herein. In the case of Seller, because it would be difficult to fix actual damages in the event of
318. Buyer's breach, the Earnest Money may be deemed a reasonable estimate of damages and Seller may, at Seller's option, accept
319. the Earnest Money as Seller's sole right to damages; and in the event of Buyer's breach arising from Buyer's failure to deliver the
320. notice required by Section 2b, or Buyer's inability to obtain loan approval due to the waiver of the appraisal contingency pursuant
321. to Section 2l, Seller shall exercise this option and accept the Earnest Money as Seller's sole right to damages. An unfulfilled
322. contingency is not a breach of Contract. The parties expressly agree that the failure of any party to comply with the terms and
323. conditions of Section 1d to allow COE to occur on the COE Date, if not cured after a cure notice is delivered pursuant to Section 7a,
324. will constitute a material breach of this Contract, rendering the Contract subject to cancellation.

**7c.** 325. **Alternative Dispute Resolution ("ADR"):** Buyer and Seller agree to mediate any dispute or claim arising out of or relating to this
326. Contract in accordance with the REALTORS® Dispute Resolution System, or as otherwise agreed. All mediation costs shall be paid
327. equally by the parties. In the event that mediation does not resolve all disputes or claims, the unresolved disputes or claims shall
328. be submitted for binding arbitration. In such event, the parties shall agree upon an arbitrator and cooperate in the scheduling of
329. an arbitration hearing. If the parties are unable to agree on an arbitrator, the dispute shall be submitted to the American Arbitration
330. Association ("AAA") in accordance with the AAA Arbitration Rules for the Real Estate Industry. The decision of the arbitrator shall be
331. final and nonappealable. Judgment on the award rendered by the arbitrator may be entered in any court of competent jurisdiction.
332. Notwithstanding the foregoing, either party may opt out of binding arbitration within thirty (30) days after the conclusion of the
333. mediation conference by notice to the other and, in such event, either party shall have the right to resort to court action.

**7d.** 334. **Exclusions from ADR:** The following matters are excluded from the requirement for ADR hereunder: (i) any action brought in the
335. Small Claims Division of an Arizona Justice Court (up to $3,500) so long as the matter is not thereafter transferred or removed from
336. the small claims division; (ii) judicial or nonjudicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or
337. agreement for sale; (iii) an unlawful entry or detainer action; (iv) the filing or enforcement of a mechanic's lien; or (v) any matter that
338. is within the jurisdiction of a probate court. Further, the filing of a judicial action to enable the recording of a notice of pending action
339. ("lis pendens"), or order of attachment, receivership, injunction, or other provisional remedies shall not constitute a waiver of the
340. obligation to submit the claim to ADR, nor shall such action constitute a breach of the duty to mediate or arbitrate.

**7e.** 341. **Attorney Fees and Costs:** The prevailing party in any dispute or claim between Buyer and Seller arising out of or relating to this
342. Contract shall be awarded their reasonable attorney fees and costs. Costs shall include, without limitation, attorney fees, expert
343. witness fees, fees paid to investigators, and arbitration costs.

>>

*Residential Resale Real Estate Purchase Contract >>*

## 8. ADDITIONAL TERMS AND CONDITIONS

8a. 344. <u>Both buyers hold an active real estate license in the state of Arizona</u>

345. _____
346. _____
347. _____
348. _____
349. _____
350. _____
351. _____
352. _____
353. _____
354. _____
355. _____
356. _____
357. _____
358. _____
359. _____
360. _____
361. _____
362. _____
363. _____
364. _____
365. _____
366. _____
367. _____
368. _____
369. _____
370. _____
371. _____
372. _____
373. _____
374. _____
375. _____
376. _____
377. _____
378. _____
379. _____
380. _____
381. _____
382. _____
383. _____
384. _____
385. _____
386. _____
387. _____
388. _____
389. _____

>>

SELLER   SELLER                                                                    BUYER   BUYER

*Residential Resale Real Estate Purchase Contract* >>

**8b.** 390. **Risk of Loss:** If there is any loss or damage to the Premises between the date of Contract acceptance and COE or possession,
391. whichever is earlier, by reason of fire, vandalism, flood, earthquake, or act of God, the risk of loss shall be on Seller, provided,
392. however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the purchase price, either Seller or
393. Buyer may elect to cancel the Contract.

**8c.** 394. **Permission:** Buyer and Seller grant Broker(s) permission to advise the public of this Contract.

**8d.** 395. **Arizona Law:** This Contract shall be governed by Arizona law and jurisdiction is exclusively conferred on the State of Arizona.

**8e.** 396. **Time is of the Essence:** The parties acknowledge that time is of the essence in the performance of the obligations described
397. herein.

**8f.** 398. **Compensation:** Seller and Buyer acknowledge that Broker(s) shall be compensated for services rendered as previously agreed by
399. separate written agreement(s), which shall be delivered by Broker(s) to Escrow Company for payment at COE, if not previously paid.
400. If Seller is obligated to pay Broker(s), this Contract shall constitute an irrevocable assignment of Seller's proceeds at COE. If Buyer
401. is obligated to pay Broker(s), payment shall be collected from Buyer as a condition of COE. COMMISSIONS PAYABLE FOR THE
402. SALE, LEASING, OR MANAGEMENT OF PROPERTY ARE NOT SET BY ANY BOARD OR ASSOCIATION OF REALTORS®, OR
403. MULTIPLE LISTING SERVICE, OR IN ANY MANNER OTHER THAN BETWEEN BROKER AND CLIENT.

**8g.** 404. **Copies and Counterparts:** A fully executed facsimile or electronic copy of the Contract shall be treated as an original Contract.
405. This Contract and any other documents required by this Contract may be executed by facsimile or other electronic means and in any
406. number of counterparts, which shall become effective upon delivery as provided for herein, except that the Disclosure of Information
407. on Lead-Based Paint and Lead-Based Paint Hazards may not be signed in counterpart. All counterparts shall be deemed to
408. constitute one instrument, and each counterpart shall be deemed an original.

**8h.** 409. **Days:** All references to days in this Contract shall be construed as calendar days and a day shall begin at 12:00 a.m. and
410. end at 11:59 p.m.

**8i.** 411. **Calculating Time Periods:** In computing any time period prescribed or allowed by this Contract, the day of the act or event from
412. which the time period begins to run is not included and the last day of the time period is included. Contract acceptance occurs on the
413. date that the signed Contract (and any incorporated counter offer) is delivered to and received by the appropriate Broker. Acts that
414. must be performed three (3) days prior to the COE Date must be performed three (3) full days prior (i.e. – if the COE Date is Friday
415. the act must be performed by 11:59 p.m. on Monday).

**8j.** 416. **Entire Agreement:** This Contract, and any addenda and attachments, shall constitute the entire agreement between Seller and
417. Buyer, shall supersede any other written or oral agreements between Seller and Buyer and can be modified only by a writing signed
418. by Seller and Buyer. The failure to initial any page of this Contract shall not affect the validity or terms of this Contract.

**8k.** 419. **Subsequent Offers:** Buyer acknowledges that Seller has the right to accept subsequent offers until COE. Seller understands that
420. any subsequent offer accepted by Seller must be a backup offer contingent on the cancellation of this Contract.

**8l.** 421. **Cancellation:** A party who wishes to exercise the right of cancellation as allowed herein may cancel this Contract by delivering
422. notice stating the reason for cancellation to the other party or to Escrow Company. Cancellation shall become effective immediately
423. upon delivery of the cancellation notice.

**8m.** 424. **Notice:** Unless otherwise provided, delivery of all notices and documentation required or permitted hereunder shall be in writing
425. and deemed delivered and received when: (i) hand-delivered; (ii) sent via facsimile transmission; (iii) sent via electronic mail, if email
426. addresses are provided herein; or  (iv) sent by recognized overnight courier service, and addressed to Buyer as indicated in Section
427. 8q, to Seller as indicated in Section 9a and to Escrow Company indicated in Section 3a.

**8n.** 428. **Release of Broker(s): Seller and Buyer hereby expressly release, hold harmless and indemnify Broker(s) in this**
429. **transaction from any and all liability and responsibility regarding financing, the condition, square footage, lot lines,**
430. **boundaries, value, rent rolls, environmental problems, sanitation systems, roof, wood infestation, building codes,**
431. **governmental regulations, insurance, price and terms of sale, return on investment or any other matter relating to the value**
432. **or condition of the Premises. The parties understand and agree that Broker(s) do not provide advice on property as an**
433. **investment and are not qualified to provide financial, legal, or tax advice regarding this real estate transaction.**

434. **(SELLER'S INITIALS REQUIRED)** ___DC___   ___JBC___   **(BUYER'S INITIALS REQUIRED)** __CT__   __AT__
                                     SELLER        SELLER                                  BUYER        BUYER

**8o.** 435. **Terms of Acceptance:** This offer will become a binding Contract when acceptance is signed by Seller and a signed copy delivered
436. in person, by mail, facsimile or electronically, and received by Broker named in Section 8q
437. by ___August 22___ , ___2022___ at ___5:00___ a.m./p.m., Mountain Standard Time.
438. Buyer may withdraw this offer at any time prior to receipt of Seller's signed acceptance. If no signed acceptance is received by this
439. date and time, this offer shall be deemed withdrawn and Buyer's Earnest Money shall be returned.

**8p.** 440. THIS CONTRACT CONTAINS TEN (10) PAGES EXCLUSIVE OF ANY ADDENDA AND ATTACHMENTS. PLEASE ENSURE
441. THAT YOU HAVE RECEIVED AND READ ALL TEN (10) PAGES OF THIS OFFER AS WELL AS ANY ADDENDA AND
442. ATTACHMENTS.

>>

*Residential Resale Real Estate Purchase Contract >>*

**8q.** 443. **Broker on behalf of Buyer:**

444. Craig Thompson     15650     SA541723000
PRINT AGENT'S NAME     AGENT MLS CODE     AGENT STATE LICENSE NO.

445. _____
PRINT AGENT'S NAME     AGENT MLS CODE     AGENT STATE LICENSE NO.

446. Realty Executives Arizona Territory     498312
PRINT FIRM NAME     FIRM MLS CODE

447. 9172 S Houghton Rd No. 110 Tucson     AZ     85747     LC640973012
FIRM ADDRESS     STATE     ZIP CODE     FIRM STATE LICENSE NO.

448. (520) 256-6117     Craigthompsonhomes@gmail.com
PREFERRED TELEPHONE     FAX     EMAIL

**8r.** 449. **Agency Confirmation:** Broker named in Section 8q above is the agent of (check one):
450. ☑ Buyer; ☐ Seller; or ☐ both Buyer and Seller

**8s.** 451. **The undersigned agree to purchase the Premises on the terms and conditions herein stated and acknowledge receipt of**
452. **a copy hereof including the Buyer Attachment.**

453. *Craig Thompson*     08/20/2022     *Ana Thompson*     08/20/2022
^ BUYER'S SIGNATURE     MO/DA/YR     ^ BUYER'S SIGNATURE     MO/DA/YR

454. Craig Thompson     Ana Thompson
^ BUYER'S NAME PRINTED     ^ BUYER'S NAME PRINTED

455. 10199 East Covington Street     10199 East Covington Street
ADDRESS     ADDRESS

456. Tucson Arizona 85748     Tucson
CITY, STATE, ZIP CODE     CITY, STATE, ZIP CODE

# 9. SELLER ACCEPTANCE

**9a.** 457. **Broker on behalf of Seller:**

458. Kehaulani Kerr     36737     SA664000000
PRINT AGENT'S NAME     AGENT MLS CODE     AGENT STATE LICENSE NO.

459. Marjan W Polek     53289     BR657009000
PRINT AGENT'S NAME     AGENT MLS CODE     AGENT STATE LICENSE NO.

460. AZ Flat Fee     52130
PRINT FIRM NAME     FIRM MLS CODE

461. 3303 E Baseline Rd #119, Gilbert, AZ 85234     LC679444000
FIRM ADDRESS     STATE     ZIP CODE     FIRM STATE LICENSE NO.

462. 520-462-8525     tucsonoffers@azflatfee.com
PREFERRED TELEPHONE     FAX     EMAIL

**9b.** 463. **Agency Confirmation:** Broker named in Section 9a above is the agent of (check one):
464. ☒ Seller; or ☐ both Buyer and Seller

**9c.** 465. **The undersigned agree to sell the Premises on the terms and conditions herein stated, acknowledge receipt of a**
466. **copy hereof and grant permission to Broker named in Section 9a to deliver a copy to Buyer.**

467. ☒ Counter Offer is attached, and is incorporated herein by reference. Seller must sign and deliver both this offer and the Counter
468. Offer. If there is a conflict between this offer and the Counter Offer, the provisions of the Counter Offer shall be controlling.

469. *Diane E Latta*     1:22 PM     08/22/22     *J Brian Latta*     3:10 PM     08/22/22
^ SELLER'S SIGNATURE     MO/DA/YR     ^ SELLER'S SIGNATURE     MO/DA/YR

470. Diane E Latta     J Brian Latta
^ SELLER'S NAME PRINTED     ^ SELLER'S NAME PRINTED

471. _____     _____
ADDRESS     ADDRESS

472. _____     _____
CITY, STATE, ZIP CODE     CITY, STATE, ZIP CODE

473. ☐ **OFFER REJECTED BY SELLER:** _____ , 20 ____ _____
MONTH     DAY     YEAR     (SELLER'S INITIALS)

**For Broker Use Only:**
Brokerage File/Log No. _____ Manager's Initials _____ Broker's Initials _____ Date _____
MO/DA/YR

Case 4:22-bk-00886-BMW Doc 67 Filed 08/25/22 Entered 08/25/22 12:21:10 Desc
Main Document Page 21 of 29

Authentisign ID: ED992689-5522-ED11-BD6E-501AC56BB54D

# H.O.A. CONDOMINIUM / PLANNED COMMUNITY ADDENDUM



**ARIZONA REALTORS®**
REAL SOLUTIONS. REALTOR® SUCCESS.

*The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.*

 

## SELLER'S NOTICE OF H.O.A. INFORMATION

1. Seller: **Diane E Latta**          **J Brian Latta**
2. Premises Address: **3222  N Riverbend Pl**          **Tucson**     **AZ   85750**
3. Date: **06/22/2022**

4. **INSTRUCTIONS:** (1) Homeowner's association ("H.O.A.") information on page 1 to be completed by Seller at the time of listing the
5. Premises for sale. (2) Upon completion, this Addendum shall be uploaded to the multiple listing service, if available, or delivered to
6. prospective buyers upon request prior to prospective buyer's submission of a Residential Resale Real Estate Purchase Contract to Seller.

## ASSOCIATION(S) GOVERNING THE PREMISES

7. **H.O.A.:** **HOA at Riverbend Estates**     Contact Info: **520-298-2363**
8. Management Company (if any): **Associa Arizona**     Contact Info: **520-877-4631**
9. Amount of Dues: $ **668.00** How often? **Annually**
10. Amount of special assessments (if any): $ _____ How often? _____ Start Date: _____ End Date: _____
    MO/DA/YR          MO/DA/YR

11. **Master Association** (if any): _____     Contact Info: _____
12. Management Company (if any): _____     Contact Info: _____
13. Amount of Dues: $ _____ How often? _____
14. Amount of special assessments (if any): $ _____ How often? _____ Start Date: _____ End Date: _____
    MO/DA/YR          MO/DA/YR

15. **Other:** _____     Contact Info: _____
16. Amount of Dues: $ _____ How often? _____

## FEES PAYABLE UPON CLOSE OF ESCROW

17. **Transfer Fees:** Association(s) fees related to the transfer of title: H.O.A.: $ **500.00** Master Association: $ _____.

18. **Capital Improvement Fees,** including but not limited to those fees labeled as community reserve, asset preservation, capital reserve,
19. working capital, community enhancement, future improvement fees, or payments: H.O.A.: $ _____ Master Association: $ _____.

20. **Prepaid Association(s) Fees:** Dues, assessments, and any other association(s) fees paid in advance of their due date:
21. H.O.A.: $ _____ Master Association: $ _____.

22. **Disclosure Fees:** Association(s)/Management Company(ies) costs incurred in the preparation of a statement or other documents
23. furnished by the association(s) pursuant to the resale of the Premises for purposes of resale disclosure, lien estoppels and any other
24. services related to the transfer or use of the property. Pursuant to Arizona law, Disclosure Fees cannot be more than an aggregate
25. of $400.00 per association. As part of the Disclosure Fees, each association may charge a statement or other documents update fee of
26. no more than $50.00 if thirty (30) days or more have passed since the date of the original disclosure statement or the date the documents
27. were delivered.  Additionally, each association may charge a rush fee of no more than $100.00 if rush services are required to be
28. performed within seventy-two (72) hours after the request. H.O.A.: $ **400.00** Master Association: $ _____.

29. **Other Fees:** $ _____ Explain: _____

30. **SELLER CERTIFICATION:** By signing below, Seller certifies that the information contained above is true and complete to the best of
31. Seller's actual knowledge as of the date signed. Broker(s) did not verify any of the information contained herein.

32. *Diane E Latta*          06/30/2022          *J Brian Latta*          06/24/2022
33. ^ SELLER'S SIGNATURE          MO/DA/YR          ^ SELLER'S SIGNATURE          MO/DA/YR
    **Diane E Latta**                              **J Brian Latta**

>>

TRANSACTIONS
TransactionDesk Edition

Marjan W Polek | AZ Flat Fee | 480-780-1047 |

**H.O.A. Condominium / Planned Community Addendum >>**

## ADDITIONAL OBLIGATIONS

34. **If the homeowner's association has less than 50 units,** no later than ten (10) days after Contract acceptance, the Seller shall provide
35. in writing to Buyer the information described below as required by Arizona law.

36. **If the homeowners association has 50 or more units,** Seller shall furnish notice of pending sale that contains the name and address
37. of the Buyer to the homeowner's association within five (5) days after Contract acceptance and pursuant to Section 3d of the Contract.
38. Escrow Company is instructed to provide such notice on Seller's behalf. The association is obligated by Arizona law to provide information
39. described below to Buyer within ten (10) days after receipt of Seller's notice.

40. **BUYER IS ALLOWED FIVE (5) DAYS AFTER RECEIPT OF THE INFORMATION FROM THE SELLER(S) OR HOMEOWNER'S**
41. **ASSOCIATION TO PROVIDE WRITTEN NOTICE TO SELLER OF ANY ITEMS DISAPPROVED.**

---

42. ### INFORMATION REQUIRED BY LAW TO BE PROVIDED TO BUYER:

43. 1. A copy of the bylaws and the rules of the association.

44. 2. A copy of the declaration of Covenants, Conditions and Restrictions ("CC&Rs").

45. 3. A dated statement containing:

46. (a) The telephone number and address of a principal contact for the association, which may be an association manager, an
47. association management company, an officer of the association or any other person designated by the board of directors.

48. (b) The amount of the common expense assessment and the unpaid common expense assessment, special assessment or
49. other assessment, fee or charge currently due and payable from the Seller.

50. (c) A statement as to whether a portion of the unit is covered by insurance maintained by the association.

51. (d) The total amount of money held by the association as reserves.

52. (e) If the statement is being furnished by the association, a statement as to whether the records of the association reflect any
53. alterations or improvements to the unit that violate the declaration. The association is not obligated to provide information
54. regarding alterations or improvements that occurred more than six years before the proposed sale. Seller remains obligated
55. to disclose alterations or improvements to the Premises that violate the declaration. The association may take action
56. against the Buyer for violations apparent at the time of purchase that are not reflected in the association's records.

57. (f) If the statement is being furnished by the Seller, a statement as to whether the Seller has any knowledge of any alterations
58. or improvements to the unit that violate the declaration.

59. (g) A statement of case names and case numbers for pending litigation with respect to the Premises or the association,
60. including the amount of any money claimed.

61. 4. A copy of the current operating budget of the association.

62. 5. A copy of the most recent annual financial report of the association. If the report is more than ten pages, the association may
63. provide a summary of the report in lieu of the entire report.

64. 6. A copy of the most recent reserve study of the association, if any.

65. 7. Any other information required by law.

66. 8. A statement for Buyer acknowledgment and signature are required by Arizona law.

>>

Case 4:22-bk-00886-BMW    Doc 67    Filed 08/25/22    Entered 08/25/22 12:21:10    Desc
Main Document    Page 23 of 29
Marjan W Polek | AZ Flat Fee | 480-780-1047 |

TRANSACTIONS
TransactionDesk Edition

*H.O.A. Condominium / Planned Community Addendum  >>*

---

# BUYER'S ACKNOWLEDGMENT AND TERMS

67. Buyer: _____

68. Seller:     **Diane E Latta**          **J Brian Latta**

69. Premises Address: **3222  N Riverbend Pl**        **Tucson**    **AZ**    **85750**

70. **NOTE: LINES 71-76 TO** *ONLY* **BE COMPLETED BY BUYER, AND** *NOT* **SELLER!**

71. **The following additional terms and conditions are hereby included as a part of the Contract between Seller and Buyer for the**
72. **above referenced Premises.**

73. **Transfer Fees** shall be paid by:      ☐ Buyer ☑ Seller ☐ Other _____

74. **Capital Improvement Fees** shall be paid by:    ☑ Buyer ☐ Seller ☐ Other _____

75. Any additional fees not disclosed on page 1 and payable upon close of escrow shall be paid by: ☐ Buyer ☑ Seller ☐ Other _____

76. _____

77. Buyer shall pay all **Prepaid Association Fees**.

78. Seller shall pay all **Disclosure Fees** as required by Arizona law.

79. In a financed purchase, Buyer shall be responsible for all lender fees charged to obtain Association(s)/Management Company(ies) documents.

80. **BUYER VERIFICATION:**  Buyer may contact the Association(s)/Management Company(ies) for verbal verification of association
81. **FEES PAYABLE UPON CLOSE OF ESCROW.**

82. **ASSESSMENTS:**  Any current homeowner's association assessment which is a lien as of Close of Escrow shall be paid in full by Seller.
83. Any assessment that becomes a lien after Close of Escrow is Buyer's responsibility.

---

# ADDITIONAL TERMS AND CONDITIONS

84.
85.
86.
87.

88. **BUYER ACKNOWLEDGEMENT:** By signing below, Buyer acknowledges receipt of all three (3) pages of this addendum and acknowledges
89. that, although Seller has used best efforts to identify the amount of the fees stated herein, the precise amount of the fees may not be known
90. until written disclosure documents are furnished by the Association(s)/Management Company(ies) per Arizona law (A.R.S. § 33-1260 and
91. §33-1806). Buyer further acknowledges that Broker(s) did not verify any of the information contained herein. Buyer therefore agrees to
92. hold Seller and Broker(s) harmless should the **FEES PAYABLE UPON CLOSE OF ESCROW** prove incorrect or incomplete.

93. The undersigned agrees to the additional terms and conditions set forth above and acknowledges receipt of a copy hereof.

94. *Craig Thompson*      **08/20/2022**      *Ana Thompson*      **08/20/2022**
95. ^ BUYER'S SIGNATURE       MO/DA/YR      ^ BUYER'S SIGNATURE       MO/DA/YR

96. **SELLER'S ACCEPTANCE:**

97. *Diane E Latta*     08/22/22     *J Brian Latta*     08/22/22
98. ^ SELLER'S SIGNATURE      MO/DA/YR      ^ SELLER'S SIGNATURE      MO/DA/YR
   **Diane E Latta**                 **J Brian Latta**

---

| For Broker Use Only: | | | | |
|---|---|---|---|---|
| Brokerage File/Log No. _____ | Manager's Initials _____ | Broker's Initials _____ | Date _____ |
| | | | | MO/DA/YR |

AutheDigiSign Verified - 8ace4da9-1194-4dab-8a00-b0b5b6dc16fe1

# COUNTER OFFER _____ 1



**ARIZONA**
*association of*
**REALTORS®**

REAL SOLUTIONS. REALTOR® SUCCESS.

The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.

 

Document updated:
**June 2021**

1. This is a Counter Offer originated by: ☒ Seller ☐ Buyer ☐ Landlord ☐ Tenant
2. This is a Counter Offer to the ☒ Offer ☐ Counter Offer dated ___08/22/2022___ between the following Parties:
   MO/DA/YR
3. Seller/Landlord: _____**Diane E Latta**_____ _____**J Brian Latta**_____
4. Buyer/Tenant: _____**Craig Thompson**_____ _____**Ana Thompson**_____
5. Premises Address: __**3222 N Riverbend Pl**__ _____**Tucson**__ **AZ** **85750**__
6. Acceptance of the above Offer and/or Counter Offer is contingent upon agreement to the following:
7. **Full Purchase Price to be $668,000**
8. **Change Line 295 to indicate Buyer to pay for Home Warranty**
9.
10. **Buyer agrees to provide a Post Possession agree to the seller for 15 days after close of escrow at no charge. Fully executed Post Possession agreement to be signed by both**
11. **parties within 72 hours of contract acceptance.**
12.
13.
14.
15.
16.
17.
18.
19. Terms of Acceptance: Unless acceptance of this Counter Offer is signed by all parties and a signed copy delivered in person, by mail,
20. facsimile or electronically, and received by the originating party's Broker named in the Contract Section 8q or 9a as applicable
21. by ___08/23/2022___ at ___2___ ☐ a.m. ☒ p.m., Mountain Standard Time, this Counter Offer shall be considered withdrawn.
22. Except as modified by this Counter Offer, all other terms and conditions of the above referenced Offer/Counter Offer(s) shall remain
23. unchanged and deemed accepted. Until this Counter Offer has been accepted in the manner described above, the Parties understand
24. that the Party originating this Counter Offer may withdraw the offer to buy, sell, or lease the Premises.
25. The undersigned acknowledges receipt of a copy hereof.
26. *Diane E Latta*
27. ☒ Seller ☐ Buyer ☐ Landlord ☐ Tenant          Date: 08/22/2022     Time: 1:22 PM
28. *J Brian Latta*
29. ☒ Seller ☐ Buyer ☐ Landlord ☐ Tenant          Date: 08/22/2022     Time: 3:10 PM

---

30. ☑ **RESPONSE**

31. An additional Counter Offer is attached, and is incorporated by reference. If there is a conflict between this Counter Offer and the
32. additional Counter Offer, the provisions of the additional Counter Offer shall be controlling.
33. *Craig Thompson*                              Date: 08/22/2022     Time: _____
34. ☐ Seller ☑ Buyer ☐ Landlord ☐ Tenant
35. *Ana Thompson*                                Date: __08/22/2022__  Time: _____
36. ☐ Seller ☑ Buyer ☐ Landlord ☐ Tenant

37. ☐ **ACCEPTANCE**

38. The undersigned agrees to the terms and conditions of this Counter Offer and acknowledges receipt of a copy hereof.
39. _____                          Date: _____          Time: _____
40. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant
41. _____                          Date: _____          Time: _____
42. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant

**For Broker Use Only:**

Brokerage File/Log No. _____  Manager's Initials _____  Broker's Initials _____  Date _____
MO/DA/YR

Counter Offer • Updated: June 2021 • Copyright © 2021 Arizona Association of REALTORS®. All rights reserved.

**Marjan W Polek | AZ Flat Fee | 480-780-1047 |**

Authentisign ID: 66B90DD9-8322-ED11-BD6E-501AC56BB54D

**COUNTER OFFER** _____2_____ .dab-8a00-b0b5b6dc16fe1

Document updated:
**June 2021**



ARIZONA
association of
**REALTORS**®

REAL SOLUTIONS. REALTOR® SUCCESS.

*The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.*




1. This is a Counter Offer originated by: ☐ Seller ☑ Buyer ☐ Landlord ☐ Tenant
2. This is a Counter Offer to the ☐ Offer ☑ Counter Offer dated __08/22/2022__ between the following Parties:
   <span style="padding-left:12em">MO/DA/YR</span>
3. Seller/Landlord: **Diane E Latta, Brian J Latta**
4. Buyer/Tenant: **Craig Thompson, Ana Thompson**
5. Premises Address: **3222 N Riverbend Place, Tucson, AZ 85750**
6. Acceptance of the above Offer and/or Counter Offer is contingent upon agreement to the following:
7. **Close of escrow to be September 22, 2022**
8. **All other terms and conditions remain the same**
9.
10.
11.
12.
13.
14.
15.
16.
17.
18.
19. Terms of Acceptance: Unless acceptance of this Counter Offer is signed by all parties and a signed copy delivered in person, by mail,
20. facsimile or electronically, and received by the originating party's Broker named in the Contract Section 8q or 9a as applicable
21. by __08/23/2022__ at __12:00__ ☐ a.m. ☑ p.m., Mountain Standard Time, this Counter Offer shall be considered withdrawn.
22. Except as modified by this Counter Offer, all other terms and conditions of the above referenced Offer/Counter Offer(s) shall remain
23. unchanged and deemed accepted. Until this Counter Offer has been accepted in the manner described above, the Parties understand
24. that the Party originating this Counter Offer may withdraw the offer to buy, sell, or lease the Premises.
25. The undersigned acknowledges receipt of a copy hereof.

26. *Craig Thompson*                              Date: 08/22/2022  05:52:26 PM MST   Time: _____
27. ☐ Seller ☑ Buyer ☐ Landlord ☐ Tenant

28. *Ana Thompson*                                Date: 08/22/2022  06:11:21 PM MST   Time: _____
29. ☐ Seller ☑ Buyer ☐ Landlord ☐ Tenant

30. ☐ **RESPONSE**

31. An additional Counter Offer is attached, and is incorporated by reference. If there is a conflict between this Counter Offer and the
32. additional Counter Offer, the provisions of the additional Counter Offer shall be controlling.

33. _____                                   Date: _____   Time: _____
34. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant

35. _____                                   Date: _____   Time: _____
36. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant

37. ☒ **ACCEPTANCE**

38. The undersigned agrees to the terms and conditions of this Counter Offer and acknowledges receipt of a copy hereof.

39. *Diane E Latta*                               Date: 08/23/2022      Time: 10:50 AM
40. ☒ Seller ☐ Buyer ☐ Landlord ☐ Tenant

41. *J Brian Latta*                               Date: 08/23/2022      Time: 9:21 AM
42. ☒ Seller ☐ Buyer ☐ Landlord ☐ Tenant

For Broker Use Only:

Brokerage File/Log No. _____   Manager's Initials _____   Broker's Initials _____   Date _____
<span style="padding-left:50em">MO/DA/YR</span>

Counter Offer • Updated: June 2021 • Copyright © 2021 Arizona Association of REALTORS®. All rights reserved.

Created by Craig Thompson, Realty Executives Arizona Territory, with SkySlope® Forms

Authentisign ID: 66B90DD9-8322-ED11-BD6E-501AC56BB54D



# Post Possession Agreement

**(AGREEMENT FOR SELLER TO OCCUPY AFTER CLOSE OF ESCROW)**

**This is an Addendum to the Contract dated** <u>8/22/2022</u> **between the following parties:**

**Seller:** <u>Diane E Latta   and   J Brian Latta</u>

**Buyer:** <u>Craig Thompson   and   Ana Thompson</u>

**Property Address:** <u>3222 N Riverbend Place, Tucson, AZ 85750</u>

The following additional terms and conditions are hereby included as part of the purchase contract described above. This agreement is intended to grant possession of the property described herein after the close of escrow. Buyer and Seller acknowledge that they have been advised to seek counsel (legal, financial, etc) regarding the advisability and implication of entering into this agreement.

**OCCUPANCY PERIOD AND COMPENSATION:** Upon execution of this agreement by both parties, Buyer hereby grants permission to Seller to retain possession of said premises as of the date title is transferred (close of escrow) to and including <u>10/6/2022</u>. Seller shall pay Buyer as compensation for the use of said premises the sum of $ <u>0</u> per <u>day</u>. Compensation for <u>N/A</u> is due on or before close of escrow in the amount $ <u>0</u> and shall be made payable to the <u>N/A</u>. All terms and conditions of this agreement shall remain in effect until Seller vacates the premises.

**DEPOSIT:** An amount of $ <u>2000</u> of Seller's proceeds shall be held in escrow as damage and security deposit under the terms and performance of this agreement.

**USE OF SECURITY DEPOSIT:** Seller agrees to surrender possession of the premise to the Buyer in substantially the same condition as at close of escrow. Buyer may retain all or part of the damage deposit for payment of any obligation or charges incurred by the Seller or caused to be incurred by the Seller for changes or repairs to the premises which arose out of the Seller's use and occupancy under the terms of this agreement. Buyer shall return any unused portion of said deposit to Seller within 10 days after the Seller vacates the premises with any itemization of any monies withheld which may not be unreasonably withheld.

**USE OF PREMISES:** Seller shall use the premises as a personal residence only and shall abide by all laws and governmental regulations with respect to the use and occupancy of the premises.

**UTILITIES/SERVICES:** Seller shall have all utilities and services remain in Seller's name and shall pay charges for all use during the term of this agreement.

Seller Initials [DL] [JBL]                    Buyer Initials _____   _____

Authentisign ID: 66B90DD9-8322-ED11-BD6E-501AC56BB54D



**HOLD HARMLESS:** Seller shall hold the Buyer and all Real Estate Brokers and Agents in this transaction harmless from any claims, liability, damages or injury to Seller, or any other person or to any property, which occurs on the premises or arises out of Seller's occupancy and use of the property, or under the terms and conditions of this agreement. Buyer shall hold all Real Estate Brokers and Agents harmless from any damages or loss occurring as a result of Seller's occupancy of said property. Buyer acknowledges that he has not relied on any recommendations or representation made by any Agent of Broker's concerning the Seller.

**INSURANCE:** Seller shall secure and maintain insurance for personal property and public liability on the premises, during the term of this agreement, naming Buyer as co-insured. Buyer shall secure and maintain adequate hazard insurance to cover the change in occupancy status of the premises (RENTAL).

**MAINTENANCE:** Seller shall maintain all mechanical and electrical systems, pool (if applicable), sewer lines, landscaping, plumbing, appliances, and equipment in normal working order, to keep the roof water tight and to maintain the grounds, during the term of this agreement.

**CHANGES TO THE PREMISES:** Seller shall not perform any changes to the premises in any way without Buyer's prior written consent.

**LIENS, JUDGEMENTS, AND ENCUMBRANCES:** Seller will not allow any liens, judgments, or other encumbrances to be placed against the premises during the term of this agreement.

**ASSIGNMENT:** Seller shall not assign this agreement, nor sublet any portion of the premises without the written prior consent of the Buyer.

**LEGAL COSTS:** Seller agrees to pay all costs in any legal action instituted by Buyer to enforce the terms hereof or for the eviction of Seller from the premises, including any reasonable attorney's fees.

**BUYERS RIGHT TO ENTER PREMISES:** Buyer or Buyer's authorized Agent shall have the right to enter the premises in case of emergency, or for the purpose of inspection, performing necessary repairs or alternations, or to supply necessary or agreed upon service. Buyer shall have the right to enter the premises to assist Seller in moving belongings.

**C .C. & R.'s:** Seller shall be responsible to pay all fines or assessments levied against Buyer of the premises due to Seller's actions or conduct in violation of the C. C. & R. and Rules and Regulations of the Homeowners Association.

Seller Initials _DC_ _JBC_        Buyer Initials _____  _____

Authentisign ID: 66B90DD9-8322-ED11-BD6E-501AC56BB54D



**ENTIRE AGREEMENT:** This addendum contains the entire agreement between Seller and Buyer with regard to the Seller's possession of the subject property after the close of escrow. This Agreement shall bind upon and exist for the benefit of the parties hereto, their heirs, successors, personal representatives and assigns. No other agreement or statement of promise made by any party not contained herein shall be binding or valid.

_Diane E Latta_        08/23/22
_____

SELLER                       DATE

_J Brian Latta_        08/23/22
_____

SELLER                       DATE

_____

BUYER                        DATE

_____

BUYER                        DATE